IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**CEDEAL HARPER**,

    **Plaintiff,**

v.                                                     **Case No.: 3:11-cv-00081**

**DAN O'HANLON,**
**B. LUKE STYRE,**
**STEPHEN JARRELL,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Docket No. 1) and the initial screening of Plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 (Docket No. 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Cedeal Harper ("Harper"), filed this complaint on February 3, 2011, naming one West Virginia Circuit Court Judge and two attorneys as defendants.[1] Harper claims that the defendants "are facilitating is [sic] false imprisonment in flagrant defiance to the constitution and laws made pursuant thereof, and therefore,

---

[1] Harper sues West Virginia State Court Judge Dan O'Hanlon, attorney B. Luke Styre, and attorney Stephen Jarrell.

have violated his 1st, 4th, 5th, 6th, 8th, 13th, 14th, and 15th amendment rights."

(Docket No. 2 at 1). He seeks the following relief:[2]

1. "A Declaration that the acts and omission described herein violated plaintiffs [sic] rights under the Constitution and laws of the United States, the Rules of Professional Conduct and Code of Judicial Conduct[;]"

2. A "preliminary and permanent injunction ordering the defendants to:

    a. promptly hold a omnibus habeas hearing "wherein the state may be required to account for plaintiffs [sic] imprisonment and if the state cannot show that the imprisonment was imposed by lawful methods the state must effectuate plaintiff [sic] immediate release;"

    b. "[s]top instituting an unlawful suspension of plaintiff [sic] currently pending habeas by preventing and delaying plaintiffs [sic] habeas corpus from review;"

    c. allow plaintiff to apply all rules for post-conviction relief and force all respondents to respond;

    d. allow plaintiff to represent himself *pro se* with standby counsel;

    e. answer all plaintiff's motions and other filings in a timely fashion;

    f. follow the Rules of Professional Conduct and Code of Judicial Conduct;

    g. reprimand those defendants that fail to abide by the Rules of Professional Conduct and Code of Judicial Conduct;

---

[2] Some of Harper's claims are not cognizable under a § 1983 claim. Harper mentions numerous defects at trial and in his appellate proceedings in order to challenge the validity of his conviction and sentence. To the extent that he is requesting this Court to invalidate his conviction and sentence, that claim for relief is properly raised in a § 2254 action after exhaustion of state court remedies. *See Heck v. Humphrey*, 512 U.S. 477, 486–88 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Therefore, the undersigned does not address those claims here. Harper should note that the Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitation period for the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Because the chronology of Claimant's post-conviction proceedings is unclear from the record, it is difficult to determine whether Harper can satisfy AEDPA's one-year limitation period.

      h.    "stop acting as a stool pigeon for the others [sic] conspirators;" and

      i.    "[s]top . . . conspiring and engaging in acts that would violate plaintiffs [sic] Constitutional Rights under the 1st, 4th, 5th, 6th, 8th, and 14th amendments to the United States Constitution."

3.   "A jury trail [sic] on all issues triable by jury;"

4.   Unspecified[3] compensatory, punitive, and nominal damages;

5.   Plaintiff's costs in this suit; and

6.   Any additional relief this court deems just, proper, and equitable.

(Docket No. 2 at 9–10). For the reasons that follow, the undersigned **FINDS** that Harper's complaint fails to state a claim upon which relief may be granted and, thus, **RECOMMENDS** that the presiding District Judge dismiss the complaint, with prejudice, and remove it from the docket of the Court.

## I. <u>Relevant History</u>

Harper was arrested and charged with one count of First Degree Murder for the killing of Wendy Morgan on July 28, 2004 in Huntington, West Virginia. In April 2006, Harper was tried in Cabell County Circuit Court before the Honorable Dan O'Hanlon and was found guilty. On August 4, 2006, Judge O'Hanlon sentenced Harper to life with mercy. Following his conviction and sentencing, Harper experienced difficulties with multiple attorneys appointed to assist him in filing a direct appeal and a habeas petition. (Docket No. 2 at 3–4). According to Harper, after waiting months for legal assistance, he finally proceeded in December 2008 to file a *pro se* petition for a writ of habeas corpus with the Cabell County Circuit

---

[3] Having reviewed Harper's complaint, it is unclear whether he is actually seeking monetary damages and, if so, in what amount. (Docket No. 2 at 10). Nonetheless, the undersigned construes the complaint as seeking monetary damages and includes this claim in the analysis below.

Court. (*Id.*). On January 13, 2009, apparently without waiting for resolution of his petition pending in Circuit Court, Harper filed a second petition for a writ of habeas corpus with the Supreme Court of Appeals of West Virginia ("WVSCA").[4] In this petition, Harper alleged errors in the instructions to the jury, an insufficient indictment, denial of a speedy trial, ineffective assistance of counsel, denial of a separate trial, and error in allowing the victim's mother and aunt to testify. The WVSCA denied Harper's petition on April 8, 2009.

Subsequently, Judge O'Hanlon appointed Stephen Jarrell to represent Harper in his habeas action. Mr. Jarrell filed an amended habeas petition with the Circuit Court on July 24, 2009. (*Id.* at 4). On September 11, 2009, Judge O'Hanlon scheduled an omnibus hearing for November 13, 2009. (*Id.*). However, on October 12, 2009, Mr. Jarrell filed a Motion to Withdraw as counsel due to conflicts with his client. Presumably, the hearing did not go forward due to the pending Motion to Withdraw and on November 24, 2009, B. Luke Styre was appointed to replace Mr. Jarrell as Harper's counsel. (*Id.*). At an unspecified time in late 2009, Judge O'Hanlon allegedly stayed Harper's habeas hearing. (*Id.*). On March 1, 2010, Harper filed a motion with the WVSCA seeking to compel the Circuit Court to take action on several pending *pro* se motions and to allow him to proceed *pro se* in his criminal appeal and habeas corpus proceeding. Several weeks later, on March 24, 2010, Harper filed a petition for a writ of prohibition with the WVSCA. The WVSCA characterized Harper's petition as a direct appeal because it raised issues attacking his conviction. On June 22, 2010, the WVSCA refused to consider the motion filed

---

[4] The procedural history of Harper's direct appeal and habeas corpus petition is taken from the WVSCA's online record of Writ Conferences. *See* www.state.wv.us/wvsca/calendar.htm

- 4 -

on March 1, 2010 and deferred consideration of Harper's March 24th petition. On November 17, 2010, the WVSCA refused the March 24, 2010 petition. Harper filed the present § 1983 action on February 3, 2011. (Docket No. 2).

## II. Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs).[5] The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992). It lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), stating that "[t]hreadbare recitals of the elements of a cause of

---

[5] Under 28 U.S.C. § 1915A, the Court also must screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

- 5 -

action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action in this court. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Here, Harper alleges wrongdoing that entitles him to relief under 42 U.S.C. § 1983; accordingly, this Court must screen the complaint to determine if it states a valid claim against the named defendants under that section. Title 42 U.S.C. § 1983 provides as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Scheuer v. Rhodes,* 416 U.S. 232, 243 (1974), quoting *Monroe v. Pape,* 365 U.S. 167, 171-72

(1961). In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of state law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121,*4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening if the defendant is immune from liability.

### III.   Analysis

Harper's complaint fails to state a claim under § 1983 for three reasons. First, his demand for "injunctive" relief is actually a request for a writ of mandamus compelling Judge O'Hanlon to manage the pending state habeas proceeding in accordance with Harper's wishes. This Court is unable to grant the relief requested by Harper because federal district courts have no authority to instruct state court judges on how to manage their pending proceedings. Second, Harper is precluded from asserting a § 1983 claim against his former attorneys because they were not acting under color of state law in their representation of Harper. Finally, Harper's request for unspecified monetary damages against Judge O'Hanlon must fail because Judge O'Hanlon has unqualified immunity against such damage claims in his role as a judicial officer.

#### A.   Request for Injunctive Relief

Harper's § 1983 complaint for injunctive relief effectively requests this Court to issue a writ of mandamus compelling Judge O'Hanlon to hold an omnibus habeas

hearing; to discontinue suspension of the habeas review; to force respondents to answer motions and discovery request; to allow Harper to act *pro se* with "standby" counsel; to stop allowing counsel to file motions on behalf of Harper; to follow the Rules of Judicial Conduct; to chastise the lawyers when they fail to follow the Rules of Professional Conduct or "due process procedures;" and to stop acting as a stool pigeon for the other "conspirators." (Docket No. 2 at 9-10). A writ of mandamus is an extraordinary writ that exists for the sole purpose of aiding courts in the exercise of their appellate jurisdiction and "in such cases as are already pending and wherein jurisdiction has been obtained on other grounds and by other process." *Gurley v. Superior Court of Mecklenburg,* 411 F.2d 586, 587 (4th Cir. 1969). Title 28 U.S.C. § 1361 confers original jurisdiction on the United States District Courts "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." As stated, a federal court may only issue a writ of mandamus against an employee or official of the United States and, even then, may only command that employee or official "to perform a mandatory or ministerial duty, rather than one that is purely discretionary." *Ocean Breeze Festival Park v. Reich,* 853 F. Supp. 906, 915 (E.D. Va. 1994), *affirmed by Virginia Beach Policeman's Benevolent Association v. Reich,* 96 F.3d 1440 (4th Cir. 1996), Consequently, this Court has no general power to compel specific action by Judge O'Hanlon, a state court judge, in a pending state habeas proceeding. Thus, the undersigned **FINDS** that "[t]his court has no original jurisdiction in the matter now presented and in no sense sits as an appellate tribunal for any state court." *Gurley,* 411 F.2d at 587. Since this Court lacks jurisdiction to issue the requested writ, Harper's claim for that relief should be dismissed.

### B. Complaint Against Appointed Lawyers

It is a matter of well-settled law that an attorney, whether retained, court-appointed, or a public defender, does not act under color of state when performing the traditional functions of a lawyer and, therefore, is not amenable to suit under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 317–24 (1981) (stating that public defenders representing defendants in criminal proceedings do not act under the color of state law for § 1983 purposes); *Hall v. Quillen*, 631 F.2d 1154, 1155–56, n. 2-3 (4th Cir. 1980) (stating that court-appointed counsel does not act under the color of state law for § 1983 purposes); *Deas v. Potts,* 547 F.2d 800 (4th Cir. 1976) (stating that private counsel retained by a defendant in criminal proceedings does not act under the color of state law for § 1983 purposes); *Nelson v. Thornsbury*, 2010 WL 1038509, *9 (S.D.W.Va. 2010); *Story v. Kopko*, 2010 WL 430831, *3 (D.S.C. February 5, 2010); *Jordan v. Lusk*, 2007 WL 1577873, *3 (S.D.W.Va. 2007). Harper presents no argument that defendants Styre and Jarrell acted outside of their traditional functions as attorneys. Instead, Harper's complaints center on acts—preparing legal briefs, filing documents with the court, and communicating with a client—clearly within the range of functions regularly performed by an attorney. Given that the two court-appointed attorneys in this case did not act under color of state law, Harper offers no legitimate basis upon which to maintain this civil action. *See Hall*, 631 F.2d at 1155–56, n. 2-3. Therefore, the undersigned **FINDS** that Harper's complaint fails to state a claim under 42 U.S.C. § 1983 against Mr. Styre and Mr. Jarrell and, hence, his claims for relief against them fail to survive the Court's initial screening.

### C. Complaint for Monetary Damages Against Judge O'Hanlon

The doctrine of judicial immunity protects Judge O'Hanlon from liability for monetary damages in the instant action and provides the final ground for dismissal of the complaint. The United States Supreme Court addressed the issue of whether a state official is a person for purposes of § 1983 in *Will v. Michigan Department of State Police,* holding "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989). As elucidated by the Supreme Court, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. The Supreme Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Therefore, if the claim against Judge O'Hanlon is an "official-capacity" claim, he enjoys the same immunity as the State of West Virginia. However, if the claim is a "personal-capacity" claim, Judge O'Hanlon is not afforded the same protection as the State, but "may assert personal immunity defenses." *Id.*

Here, Harper arguably brings suit against Judge O'Hanlon in both his official and personal capacities. (Docket No. 2 at 10). As discussed above, in his official capacity, Judge O'Hanlon is not a "person" for purposes of 42 U.S.C. § 1983 and is not subject to a claim for money damages thereunder. *Will*, 491 U.S. at 71. In his personal capacity, Judge O'Hanlon is a properly named defendant, but the complaint may still fail if the claims against Judge O'Hanlon are malicious, frivolous, or meritless, or if Judge O'Hanlon enjoys immunity under other state or federal law.

Even in his personal capacity, Judge O'Hanlon is cloaked with absolute judicial immunity against the claims asserted by plaintiff. In *Pierson v. Ray*, 386 U.S. 547 (1967), the United States Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. § 1983 for an unconstitutional conviction. The Court presented its rationale in applying the doctrine of judicial immunity:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction…This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"… It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Pierson*, 386 U.S. at 553–54.

Two requirements must be met in order for a Court to apply judicial immunity. First, "the judge's action cannot have been undertaken in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). The question is "whether at the time [the judge] took the challenged action, he had jurisdiction over the subject matter before him," and, in answering that question, "the scope of the judge's jurisdiction must be construed broadly." *Stump*, 435 U.S. at 356. The second condition is that the act must be a "judicial act." *Id.* at 360–62. The determination of whether an act by a judge is a "judicial act" relates "to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Id.* at 362.

Judge O'Hanlon indisputably had jurisdiction over Harper's habeas action. Judge O'Hanlon was a member of West Virginia's Sixth Judicial Circuit, which encompasses Cabell County, the county in which Harper's habeas action was filed. The Circuit Courts are the State's only general jurisdiction trial courts; among other matters, the Circuit Courts have jurisdiction over civil actions, such as habeas corpus petitions. Thus, the only remaining inquiry is whether the act of which plaintiff is complaining is a "judicial act." Harper asserts that Judge O'Hanlon improperly managed Harper's state habeas action by delaying the proceedings, wrongfully controlling Harper's legal representation, and otherwise violating the Code of Judicial Conduct in the exercise of his judicial duties. Judge O'Hanlon's management of Harper's habeas case was clearly a "judicial act," regularly performed by Judge O'Hanlon in his judicial capacity. Accordingly, as Judge O'Hanlon had jurisdiction over Harper's habeas action and acted within in the

regular course of his judicial duties at all times, judicial immunity is appropriate and precludes monetary recovery in this action.

Therefore, the undersigned **FINDS** that Judge O'Hanlon is not a "person" under 42 U.S.C. § 1983 in his official capacity and is entitled to absolute judicial immunity in his personal capacity. Consequently, Harper's complaint fails to state a claim for monetary damages against Judge O'Hanlon under 42 U.S.C. § 1983 and fails to survive the Court's initial screening.

### IV.  Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that:

1.  Plaintiff's Application to Proceed Without Prepayment of Fees and Costs be **DENIED** (Docket No. 1) as moot;

2.  Plaintiff's § 1983 Complaint (Docket No. 2) be **DISMISSED** in its entirety, with prejudice; and

3.  This case be removed from the Court's docket.

Plaintiff is hereby notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and

Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the petitioner, the respondents, and any counsel of record.

**FILED:** February 23, 2012.

*[signature]*
Cheryl A. Eifert
United States Magistrate Judge